IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL C. BOSCO, JR.,       )
                                      )
           Plaintiff,         )
                                      )
          v.                 )     2:16cv1264
                                      )     **Electronic Filing**
**PITTSBURGH BOARD OF PUBLIC**   )
**EDUCATION** and **JOHN** and/or    )
**JANE DOE**,                    )
                                        )
           Defendants.     )

## OPINION

Michael C. Bosco, Jr., ("plaintiff") commenced this civil rights action against the Pittsburgh Board of Public Education (defendant or "the Board") and John and/or Jane Doe, seeking redress for the alleged publication of false information regarding plaintiff's prior work history at a Pittsburgh public school. Plaintiff maintains that the publication infringed on his protected liberty interest to pursue an occupation, thereby resulting in a violation of substantive due process under the Fourteenth Amendment. Presently before the court are the Board's motions for summary judgment and to dismiss the John and/or Jane Doe defendants. For the reasons set forth below, summary judgment will be granted as to all claims in the case.

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(A). Rule 56 "'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Marten v.

Godwin, 499 F.3d 290, 295 (3d Cir. 2007) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)).  Deciding a summary judgment motion requires the court to view the facts, draw all reasonable inferences and resolve all doubts in favor of the nonmoving party.  Doe v. Cnty. of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001).

The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact.  When the movant does not bear the burden of proof on the claim, the movant's initial burden may be met by demonstrating the lack of record evidence to support the opponent's claim.  Nat'l State Bank v. Fed. Reserve Bank of New York, 979 F.2d 1579, 1581-82 (3d Cir. 1992).  Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial*," or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law.  Matsushita Electric Industrial Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(E)) (emphasis in Matsushita).  An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In meeting its burden of proof, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586.  The non-moving party "must present affirmative evidence in order to defeat a properly supported motion" . . . "and cannot simply reassert factually unsupported allegations."  Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989).  Nor can the opponent "merely rely upon conclusory allegations in [its] pleadings or in memoranda and briefs."  Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992); Sec. & Exch. Comm'n v. Bonastia, 614 F.2d 908, 914 (3d Cir. 1980) ("[L]egal conclusions, unsupported by documentation of specific facts,

are insufficient to create issues of material fact that would preclude summary judgment."). Likewise, mere conjecture or speculation by the party resisting summary judgment will not provide a basis upon which to deny the motion. Robertson v. Allied Signal, Inc., 914 F.2d 360, 382-83 n.12 (3d Cir. 1990). If the non-moving party's evidence is merely colorable or lacks sufficient probative force summary judgment may be granted. Anderson, 477 U.S. at 249-50; see also Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993) (although the court is not permitted to weigh facts or competing inferences, it is no longer required to "turn a blind eye" to the weight of the evidence).

The record as read in the light most favorable to plaintiff establishes the background set forth below. Plaintiff was employed as a physical education teacher with Pittsburgh Public Schools from August 30, 1994, to June 18, 2012. In November of 2011 and January of 2012 plaintiff was subject to disciplinary action as a result of two separate incidents involving his interaction with students under his supervision. The second incident resulted in a five day suspension to be followed by a recommendation of termination. Following an investigation of this incident plaintiff was placed on unpaid leave of absence. Thereafter, plaintiff and defendant entered into a settlement agreement calling for plaintiff to remain on unpaid leave through the end of the school year, at which time he would be separated from employment with the separation being deemed a voluntary resignation. This approach permitted plaintiff to remain eligible for a severance package, which he received. Plaintiff separated from his employment on June 18, 2012.

The first incident leading to discipline against plaintiff occurred on November 15, 2011, at the Martin Luther King Elementary School. Plaintiff admittedly picked up a

noncompliant third-grader by lifting the student up around the waist and carrying the child to the side of the gymnasium. A critical incident report was generated and filed. Three statements by students claiming to have witnessed the incident were attacked to the report. A disciplinary meeting was held. Plaintiff was in attendance as well as Jody Buchelt Spolar, who at that time was the Board's Chief Human Resources Officer. Also in attendance was Shana Nelson, Principal at Martin Luther King Elementary School, Mike Perella, Assistant Principal, and Mary Van Horn, a Pittsburgh Federation of Teachers representative. As a result of this incident plaintiff received and served a ten-day suspension.

The second incident occurred on January 25, 2012. Plaintiff was trying to get a non-compliant student who was sitting on a bench to stand up. He approached the bench and pulled or "yanked" it up. The student did not stand up as plaintiff intended. Instead, the student fell backwards and hit his head on the wall. The student complained that his head was hurting and he was sent to the school nurse's office. The incident was captured on surveillance video and that video has been introduced into the current record.

A critical incident report was generated. It contained the signed statements of two teachers who spoke to students involved in the incident after it had occurred. It also contained a signed statement by the child involved as well as a signed statement by a parent of that child.

A disciplinary meeting was initiated five days later on January 30, 2012. Plaintiff attended the meeting as did Chief Human Resources Officer Jody Buchelt Spolar, Principal Shana Nelson, Assistant Principal Mike Perella, and representative Mary Van Horn. The investigation into the incident was ongoing.

On February 9, 2012, plaintiff was informed that he would receive a five day disciplinary suspension. The suspension would be followed by a recommendation that he be

terminated. Ms. Spolar described the incident on the video as reflecting that plaintiff approached the bench, jerked it upwards and caused the child to fall backwards, hitting his head on the wall and falling to the floor. Plaintiff did not file a grievance and he was placed on an unpaid leave of absence on February 13, 2012.

Plaintiff and the Board executed a settlement on March 22, 2012. It called for plaintiff to remain on unpaid leave until the end of the school year. At that point he would be deemed to be separated from employment with defendant pursuant to a voluntary resignation. This resolution permitted plaintiff to avoid termination and receive a severance package.

Plaintiff has sought and obtained a variety of employment positions since May of 2012. He has worked as a substitute teacher, a high school softball coach, performed the functions of an assistant principal, taught on-line classes and graded the coursework of online students. This included working as a permanent substitute in the Penn Hills School District at the Linton Middle School from March of 2015 through June of 2015 and September of 2015 through January of 2016.

In June of 2015 plaintiff applied for a high school physical education position with Bentworth School District. He was one of eight candidates interviewed for the position. He did not advance beyond the interview stage and he did not obtain the position. The Bentworth School District did not inquire with or seek any information from defendant about plaintiff's employment in the Pittsburgh Public Schools.

In October of 2015, plaintiff was interviewed and became one of two finalists for an interim assistant high school principal position with the Ambridge Area School District. Plaintiff did not obtain the position.

As part of the application process for the position with the Ambridge Area School District plaintiff was required to complete a Commonwealth of Pennsylvania Sexual Misconduct/Abuse Disclosure Form ("Act 168 Form").  Act 168 Forms are standard forms developed by the Pennsylvania Department of Education.  Under the School Code, a school entity must obtain a completed Form before it may offer employment to an applicant that will "be employed by or in a school entity in a position involving direct contact with children."  24 P.S. § 1-111.1(b)(1)(iii)(A)-(B).  As part of this process the school entity seeking to hire the applicant is required to conduct a review that includes contacting former school employers regarding the information required.  24 P.S. § 1-111.1(b)(2)(ii)(A)-(B).

The Act 168 Form includes sections that must be completed by both the applicant and the applicant's former school employers.  Plaintiff indicated on the form that he had not "[b]een the subject of an abuse or sexual misconduct investigation by any employer, …" or "been disciplined, discharged, . . . resigned from or otherwise separated from employment while allegations of abuse or sexual misconduct were pending . . . ."  See 24 P.S. § 1-111.1(b)(2)(ii)(B).  Defendant likewise indicated "No" to the same section of the form and did not otherwise provide any negative information in completing the form.

After being unable to obtain long-term employment in an educational position, plaintiff became concerned that defendant might be completing the Act 168 Form negatively.  He submitted an Act 168 Form to defendant with regard to plaintiff's past employment and arranged for it to be returned to his friend and Montour School District Board member, Mark DiClemente.   Defendant completed the form and returned it to DiClemente as requested.  This time, defendant answered yes to the question of whether plaintiff had ever "[b]een the subject of an abuse or sexual misconduct investigation by any employer, …" or "been disciplined,

discharged, . . . resigned from or otherwise separated from employment while allegations of abuse or sexual misconduct were pending . . . ."

DiClemente shared the content of the returned Form with plaintiff, the Montour School District superintendent and one other Montour School Board member.  In a subsequent discussion the superintendent advised plaintiff that defendant's answer in the Act 168 Form was damaging to plaintiff's reputation.

Since separating from employment with defendant plaintiff has made multiple attempts to work for Montour School District.  Other than as noted above, he has not been successful.  Montour School District was not considering plaintiff for employment at the time DiClemente received the completed form and its content was discussed thereafter by DiClemente, the superintendent and the other board member.

Plaintiff holds professional certifications of instructional level two (teaching), elementary principal and secondary principal, which he consistently has maintained.  After separating from employment with defendant plaintiff has applied for approximately fifty teaching positions, one hundred and seventy-five administrative positions and twelve positions in the private sector.  Plaintiff currently is not employed in education and more recently has been working for Uber.

 Renee Dinkins-Malone ("Dinkins-Malone") has been employed by the Board for approximately thirteen years and worked as a human resources specialist in 2015.  One of her responsibilities at that time was completing submitted Act 168 Forms.  She usually completed the forms based on the information on the former employee contained in the Board's database.

It was Dinkins-Malone's developed practice based on prior experience and training to complete an Act 168 Form from the information in defendant's database if that information did

not present anything irregular or otherwise raise a cause for concern. If, however, the information in the database created a basis for concern, such as a former employee having been terminated, or if the incoming form indicated that it was to be returned to an unusual or improper party, such as the individual who was the subject of the Form, she would do additional research into the person's employment. She would also forward her concerns to the Board's employee relations department and/or its law office if she believed such further review was warranted.

Dinkins-Malone completed the Act 168 Form for plaintiff and returned it to Ambridge. She responded "No" to the inquiry on this request because there was nothing in the information on her computer regarding abuse and the database did not identify termination (an involuntary separation) as the reason for plaintiff's separation. There was nothing irregular or negative on this Act 168 Form.

Dinkins-Malone also received the Act 168 Form submitted by plaintiff. Plaintiff's request that the form be returned to Montour School Board member DiClemente, an individual school board member, immediately was recognized as an irregularity. As part of her effort to research the unusual submission, Dinkins-Malone made contact with Montour School District and learned that there was no individual with plaintiff's name under consideration as a prospective hire. Dinkins-Malone then went to defendant's employee relations department and asked how to proceed with respect to faxing the form to Montour.

Dinkins-Malone spoke with Susan Dobie-Sinicki ("Sinicki"), assistant director for employee relations at the time. Sinicki had some familiarity with plaintiff because she had handled the grievance he submitted regarding his 10-day suspension arising from his grabbing and carrying a student in the gymnasium on November 15, 2011. After gaining a refreshed

understanding of plaintiff's separation, Sinicki determined that the matter would need to be forwarded to the Law Department for review. In her opinion a legal review was appropriate given the nature of the form, plaintiff's separation from employment and the questions presented about "how [the Board] should properly respond given the changes in the law." She referred the Act 168 Form to the Solicitor's office.

After legal review, it was determined that plaintiff had been subject to an abuse investigation regarding the January 25, 2012, incident. That incident had involved plaintiff suddenly picking up a bench and a child falling in the process and striking his head. The solicitor's office determined that this incident presented a form of "child abuse" as defined by the Child Protective Services Law. That determination was based on the definition of child abuse at the time the Act 168 Form was being prepared and returned.

The definition of "child abuse" under the Child Protective Services Law that was used by the solicitor's office was enacted into law by Act 168 of the Pennsylvania's Public School Code of 1949. Act 168 defines "abuse" as "conduct which falls under the purview and reporting requirements of 23 Pa. C. S. Ch. 63." 24 P.S. § 1-111.1(n). The CPSL defines child abuse to include "intentionally, knowingly or recklessly [c]ausing bodily injury to a child through any recent act or failure to act," or "[c]reating a reasonable likelihood of bodily injury to a child through any recent act or failure to act." 23 Pa. C. S. § 6303(b.1)(1), (5). It also includes "[u]nreasonably restraining or confining [a] child." 23 Pa. C. S. § 6303(b.1)(8). "Bodily injury" is defined as "[i]mpairment of physical condition or substantial pain." 23 Pa. C. S. § 6303(a).

At the time of the incidents, the definitions of child abuse utilized by the solicitor's office and the Act 168 Form did not exist. It was Sinicki's opinion that under the version of the

CPSL that did exist at that time the two incidents would not have been reportable to "Childline." She also was unaware of any finding of "child abuse" that was made in conjunction with either of the two incidents. An investigation pursuant to Act 168 as specifically set forth in the legislative scheme enacted into law in December of 2014 did not occur and formal determinations about whether a claim of child abuse was substantiated or found to be false were not made in conjunction with either incident.

Defendant moves for summary judgment on the grounds that plaintiff lacks sufficient evidence to establish any of the elements required to establish a substantive due process violation. Specifically, defendant maintains that the record only supports the view that it answered the Act 168 Form accurately, the form only was sent to a recipient that plaintiff chose to receive it (in order to see how defendant would answer the Act 168 inquiry and not to a prospective employer considering plaintiff for employment), and plaintiff cannot show that he lost a single employment opportunity from defendant's actions. It further asserts that plaintiff has failed to identify any protectable interest that will support a due process violation under the Fourteenth Amendment. And from its perspective, the loss of prospective employment opportunities legally is insufficient. As a result, defendant asserts that plaintiff cannot prove the elements of his Fourteenth Amendment due process claim.

Plaintiff maintains that at the time each of the incidents occurred his conduct did not fall within any applicable definition of child abuse. As a result, he was not and could not have been investigated for such conduct. As a result, defendant's retroactive reclassification of what occurred assertedly creates a false stigma inuring to the detriment of plaintiff's reputation. Because plaintiff was not investigated for child abuse as defined in Act 168, the publication of information indicating that he was is false. And the inclusion of plaintiff in this category and

defendant's implicit admission that it will continue to respond in such a manner has placed a sufficient burden on plaintiff's prospective employment opportunities in education to satisfy the elements of a "stigma plus" claim under the Due Process Clause of the Fourteenth Amendment.  Plaintiff argues that as a result the matter must be left for a jury to resolve.

In general, § 1983 does not itself create substantive rights, but instead provides a vehicle for vindicating a violation of a federal right.[1]  Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).  A cause of action under § 1983 has two elements: a plaintiff must prove (1) a violation of a right, privilege or immunity secured by the constitution and laws of the United States (2) that was committed by a person acting under color of state law. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cr. 1996); Kelly v. Borough of Sayerville, 107 F.3d 1073, 1077 (3d Cir. 1997); Berg v. City. Of Allegheny, 219 F.3d 261, 268 (3d Cir. 2000) ("The Plaintiff must demonstrate that a person acting under color of law deprived him of a federal right.") (citing Groman, 4 F.3d at 633).

Claims premised on misrepresentation alleged to be in violation of substantive due process are analyzed under the "stigma-plus" doctrine.  Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir. 2006) (citing Paul v. Davis, 424 U.S. 693 (1976)).  In this regard it has long been recognized that an individual has a protectable interest in his or her reputation.  Hill, 455 F.3d at 235 (citing Wisconsin v. Constantineau, 400 U.S. 433 (1971)).  Nevertheless, "reputation alone is not an interest protected by the Due Process Clause."  Id. at 236 (quoting Versarge v.

_____

[1]  Section 1983 creates liability against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.

Township of Clinton, New Jersey, 984 F.2d 1359 (3d Cir. 1993) (citing Paul v. Davis, 424 U.S. 693 (1976)).[2] Thus, in order to state "a due process claim for a deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest." Id. (citing Paul v. Davis, 424 U.S. 693 (1976)).

In order to satisfy the stigma prong, a public employee must be able to prove that the "stigmatizing statement(s) (1) were made publicly and (2) were false." Id. (citing Bishop v. Wood, 426 U.S. 341, 348 (1976); Chabal v. Reagan, 841 F.2d 1216 (3d Cir. 1988); Anderson v. City of Philadelphia, 845 F.2d 1216, 1222 (3d Cir. 1988); and Fraternal Order of Police v. Tucker, 868 F.2d 74, 82-83 (3d Cir.1989)). It must be shown that there was a harm to one's reputation consisting of the publication of a substantially and materially false statement that infringed upon the "reputation, honor, or integrity of the [individual]." Brown v. Montgomery County, 470 F. App'x 87, 91 (3d Cir. 2012).

Plaintiff has failed to advance sufficient evidence to satisfy the stigma requirement. To proceed to a jury trial plaintiff must have sufficient evidence to show that the allegedly stigmatizing information was "published" or otherwise disseminated by his government employer to the public. Chabal, 841 F.2d at 1223 (citing Bishop v. Wood, 426 U.S. 341, 348 (1976)). Where the information is not disclosed to the public in a manner that causes damage to the individual's "good name, reputation, honor or integrity," the publication requirement has not

_____

[2] In Davis, the Supreme Court opined that damage to reputation alone is best vindicated with a state defamation claim. Davis, 424 U.S. at 712. The Third Circuit has recognized, however, that state law immunity doctrines often prevent such claims from being brought against government actors. Hill, 455 F.3d at 236 n. 14 (citing Lindner v. Mollan, 544 Pa. 487, 677 A.2d 1194, 1195–1196 (1996) (doctrine of absolute privilege exempts a high public official from all civil suits for damages arising out of false defamatory statements provided the statements are made in the course of the official's duties or powers and within the scope of his authority).

been established and recourse is not available under the Fourteenth Amendment. Bishop, 426 U.S. at 348.

Plaintiff's evidence falls short of establishing that defendant released the information on the Act 168 Form in a public manner. Plaintiff made a request that an Act 168 Form be completed and returned to Mark DiClemente, his friend who sat as a member of the Montour School Board. It was DiClemente who disclosed the Form to all others who have viewed it. From there, plaintiff sought to and purposefully discussed the matter with the superintendent of the Montour School District and one other board member. Such discloses fall far short of the type of public dissemination for which the protections of the constitution may be invoked. See id., (false reasons given to police officer by the Chief of Police in discharging the officer that were capable of severely stigmatizing the officer's reputation in the community could not support a due process claim where a public dissemination of those reasons had not occurred); Chabal, 841 F.2d at 1223-24 (government entity must disseminate information disparaging a plaintiff's "good name, reputation, honor, or integrity" to the public in order to sustain an actionable infringement of one's liberty interest).

Plaintiff takes the position that defendant's return of the Act 168 Form to DiClemente is a prediction of how it will respond to any inquiry from a potential employer in the future and therefore there is sufficient information to satisfy the publication requirement. But the mere possibility that a government employer might actually disclose derogatory information about a prior employee's separation from employment is insufficient. Indeed, the mere placement of derogatory information in a plaintiff's file with the intent to disseminate it to future employers does not amount to a form of publication implicating the protections of the Fourteenth Amendment. Cooley v. Pennsylvania Housing Fin. Agency, 830 F.2d 469, 474-75 (3d Cir.

1987), *abrogated on other grounds by* <u>Foster v. Chesapeake, Ins. Co.</u>, 933 F.2d 1207, 1215 n. 12 (3d Cir. 1991). In basic terms, that is all plaintiff can establish after full discovery. As a result, defendant is entitled to summary judgment for lack of sufficient evidence to prove public disclosure.

Plaintiff likewise has failed to proffer sufficient evidence to establish that the dissemination that did occur was false or misleading. Identifying a stigmatizing dissemination by a prior government employer does not in itself implicate the constitutional protections afforded to an individual's liberty interest. <u>Codd v. Velger</u>, 429 U.S. 624, 627 (1977); <u>Fraternal Order of Police Lodge No. 5 v. Tucker</u>, 868 F.2d 74, 82 (3d Cir. 1989). To the contrary, the stigmatizing information must be substantially false. <u>Codd</u>, 429 U.S. at 627-29; <u>Fraternal Order of Police Lodge No. 5</u>, 868 F.2d at 82-82; <u>Hill</u>, 455 F.3d at 236 (To satisfy the stigma prong the publicly disseminated statements must have been false.).

Here, plaintiff's efforts to identify a defamatory statement by defendant is an exercise in semantics. Plaintiff does not deny nor can he dispute that 1) the January 25, 2012, incident occurred as recounted above; 2) in trying to get a non-compliant student who was sitting on a bench to stand up plaintiff approach the bench and pulled or "yanked" it up; 3) the student did not stand up as plaintiff intended and instead fell backwards and hit his head on the wall; 4) the student complained that his head was hurting and he was sent to the school nurse's office; 5) the incident was captured on surveillance video and that video has been introduced into the current record; 6) a critical incident report was generated by defendant's supervising personnel; 7) teachers who spoke to students involved in the incident after it had occurred had signed statements reflecting on plaintiff's conduct; 8) the report contained a signed statement by the child involved as well as a signed statement by a parent of that child; 9) disciplinary meetings

14

were held and the matter was further investigated over the course of several weeks; 10) after investigation plaintiff was informed that he would be subject to a five day disciplinary suspension followed by a recommendation that he be terminated; and 11) plaintiff and defendant thereafter entered into a settlement which called for plaintiff's separation as the end result of the incident. These undisputed facts fit clearly within the Act 168 Form inquiring whether plaintiff had "[b]een the subject of an abuse . . . investigation by [defendant, his former employer]" and had "separated from employment while allegations of abuse . . . were pending or under investigation . . . or due to findings of abuse . . . as described in clause  (A) ." 24 P.S. § 1-111.1(b)(2)(ii)(B).

Plaintiff's contention that defendant placed and will continue to place false information in the Act 168 Form because neither 1) the Act nor 2) the investigation, inquiries and forms which it mandates existed in 2012 is insidious. It cannot be disputed that Act 168 was not in effect until December of 2014. But the Act does not contain any language to support plaintiff's view that the legislature intended to limit its reporting requirements to incidents that were only investigated pursuant to formal investigations conducted under Act 168 and its accompanying regulations. To the contrary, the scope of the Act and its reporting requirements cast a much wider net. The Act requires that prior employers provide a statement "as to whether the applicant: (A) was the subject of *any* abuse [] investigation by *any* employer, State licensing agency, law enforcement agency or child protective services agency, unless such investigation resulted in a finding that the allegations were false."  24 P. S. § 1-111.1  It likewise does not permit an applicant for employment to limit his or her disclosure of "former employers that were school entities" to only those who employed the applicant after the effective date of the Act; to the contrary, the "employment history review" contemplated by the legislature requires

an applicant to provide a list of "all" such former employers. 24 P. S. §§ 1-111.1(b)(1)(i)(B), (ii).[3] It also requires the identification of "all former employers where the applicant was employed in positions that involved direct contact with children." 24 P. S. § 1-111.1(b)(i)(C). And the inquiry of such past employers temporally encompasses the entire prior employment relationship. See 24 P. S. § 1-111.1(b)(2)((ii)(B) ("A statement as to whether the applicant was disciplined, discharged, nonrenewed, asked to resign from employment, resigned from or otherwise separated from any employment while allegations of abuse or sexual misconduct as described in clause (A) were pending or under investigation"). It further requires disclosure of any suspension, revocation or surrender of a license or certificate that the prior employer is aware of regardless of when it occurred. See 24 P. S. § 1-111.1(b)(2)((ii)(C) ("has ever had a license, professional license or certificate suspended, surrendered or revoked while allegations of abuse or sexual misconduct as described in clause (A) were pending or under investigation, or due to an adjudication or findings of abuse or sexual misconduct as described in clause (A)."). It follows that the information on the Act 168 Form that the Pennsylvania legislature requires a former employer such as defendant to disclose cannot be limited to incidents or events that occurred after December 22, 2014; instead, such employers must provide information that is based on the entirety of the past employment relationship.

Plaintiff likewise cannot dispute that the January 25, 2012, incident constituted "abuse" within the scope of Act 168. Plaintiff maintains that he disputed the facts and circumstances of

---

[3] Interestingly, an applicant for actual employment also must provide "a written authorization that . . . releases those employers from liability that may arise from such disclosure or release of records pursuant to subsection (d)(5)." 24 P. S. § 1-111.1(b)(ii). The method plaintiff devised to obtain the Act 168 Form that defendant sent to DiClemente permitted plaintiff to bypass this mandated release that is required by all bona fide applicants.

16

the incident. But his disagreement about how the incident should be characterized does not remove it from the purview of the Act and the subject form.

The Pennsylvania legislature defined "abuse" in conjunction with the mandated employment history review to be "[c]onduct that falls under the purview and reporting requirements of 23 Pa. C. S. Ch. 63 and is directed toward or against a child or a student, regardless of the age of the child or student." 24 P. S. § 1-111.1(n). The Pennsylvania's Child Protective Services Law, 23 Pa. C. S. § 6301 ("the CPSL") defines child abuse as 'intentionally, knowingly or recklessly (1) [c]ausing bodily injury to a child [or] (5) [c]reating a reasonable likelihood of bodily injury to a child through any recent act or failure to act." 23 Pa. C. S. §§ 6303(b.1)(1),(5).

Here, plaintiff admittedly pulled up a bench to get a defiant child to stand up and the child fell and hit his head in the process. After an investigation, which included video of the incident and statements of those involved, discipline in the form of suspension with a recommendation of termination was issued. Plaintiff chose not to further contest that discipline and entered into an agreement that called for his separation prior to implementation of the recommendation of termination. Consequently, it cannot be disputed that the incident involved at least a knowing act that created a reasonable likelihood of bodily injury to a child.

It follows that the Act 168 Form sent to DiClemente did not contain false or misleading information. As a result, the record contains insufficient evidence to support a finding in plaintiff's favor on this essential requirement and this deficiency also entitles defendant to summary judgment.

Finally, plaintiff has failed to advance sufficient evidence to sustain a finding that anything more than harm to his reputation has occurred as a result of defendant's challenged

conduct. Recognizing that such harm is insufficient to satisfy the "plus" prong of a § 1983

claim predicated on an infringement of his liberty, plaintiff seeks to satisfy this element by

pointing to the added burden that Act 168 places on his prospects for future employment in

education. But plaintiff has not sued the Commonwealth. And his evidence fails to support

the notion that defendant's completion of the one Act 168 Form in question has had any impact

on plaintiff's employment prospects. Nor does it demonstrate that he will endure harm in the

future to the degree that garners protection under the Fourteenth Amendment. It follows that

he lacks sufficient evidence to support the plus prong of the analysis.

It is beyond question that a plaintiff must have sufficient evidence to satisfy the "plus"

requirement. Hill, 455 F.3d at 236. In the context of an employment relationship, the plus

prong typically is satisfied by the stigma occurring as part of the termination of employment.

Kahan v. Slippery Rock University of Pennsylvania, 50 F. Supp.3d 667, 710 (W.D. Pa. 2014).

The termination then satisfies the plus requirement. Id. But in other settings, "reputational

damage that occurs in the course of or is accompanied by a change or extinguishment of a right

or status guaranteed by state law or the Constitution' [also] is actionable." Id. (quoting D & D

Assoc., Inc. v. Bd. of Educ. of N. Plainfield, 552 F. App'x. 110, 113 (3d Cir. 2014) and

collecting cases).

The Fourteenth Amendment guarantees all persons born or naturalized in the United

States the "liberty to pursue a calling or occupation." Simpson v. Nicklas, 500 F. App'x. 185,

188 (3d Cir. 2014). It is well settled that this right protects participation in an occupation as a

whole. See Piecknick v. Pennsylvania, 36 F.3d 1250, 1262 (3d Cir. 1994) ("It is the liberty to

pursue a calling or occupation . . . that is protected by the Fourteenth Amendment."). In other

18

words, to satisfying the plus prong a defendant's stigmatizing conduct must rise to the level of foreclosing the plaintiff from an entire occupation.

In contrast, the protections afforded to the liberty interest through the Fourteenth Amendment do not extend to a specific job or role in an occupation, nor do they protect against the ordinary deleterious effects arising from defamation such as impugning one's business reputation.  See Klug v. Chicago School Reform Bd. of Trustees, 197 F.3d 853 (7th Cir. 1999) (a plaintiff's demotion from dean of incoming freshman at a high school to teacher at an elementary school did not constitute a deprivation of a protectable liberty interest); Sadallah v. City of Utica, 383 F.3d 34 (2d Cir. 2004) (damage to business reputation and deprivation of good will in business were merely deleterious effects of defamation and did not satisfy the "plus" requirement).  Similarly, the mere "possible loss of future employment opportunities," and generalized "financial harm" are insufficient to support a reputation-based due process claim.  Kahan, 50 F. Supp. 3d at 710 (quoting Simpson, 500 F. App'x. at 188 (citing Clark, 890 F.2d at 620, and Sturm v. Clark, 835 F.2d 1009, 1013 (3d Cir.1987)) and citing Thomas, 463 F.3d at 297; Hill, 455 F.3d at 232–33; and Arneault v. O'Toole, 513 F. App'x. 195, 198–99 (3d Cir. 2013) (loss of possible business prospects by being required to disclose an unfavorable fact on future applications does not satisfy the plus prong)).

Here, plaintiff has failed to produce any evidence to support the contention that defendant's affirmative answer on the Act 168 Form has had any impact on his pursuit of new employment to date.  It is undisputed that plaintiff has been unable to secure permanent employment in education since separating from defendant.  It also is undisputed that over the past several years plaintiff has worked as a substitute teacher, high school softball coach, acting assistant principal and on-line teacher.  He recently advanced to the interview stage for a

19

high school physical education position with Bentworth School District and was one of two finalists for an interim assistant high school principal with Ambridge Area School District. In each of these situations the record unequivocally demonstrates that an Act 168 Form did not have any impact on plaintiff's inability to parlay these opportunities into permanent employment.

Moreover, plaintiff has applied for approximately 50 teaching positions, 174 administrative positions and 12 positions in the private sector since separating from employment with defendant. And in each of these instances the record unequivocally demonstrates that an Act 168 Form did not have any impact on plaintiff's inability to obtain fulltime, permanent employment. It likewise is undisputed that plaintiff was not being considered for a position with Montour School District when DiClemente received the only Act 168 Form defendant ever answered in the affirmative.[4] Thus, plaintiff lacks any evidence to show that the Act 168 Form and/or defendant's conduct has had any impact on his ability to obtain any form of employment to date.

Plaintiff likewise lacks evidence to show that the Act 168 Form has precluded him from the ability to pursue a calling or occupation as a whole. Plaintiff's efforts at procuring prospective employment since separating from defendant forcefully undercut if not outright preclude plaintiff's contention to the contrary. Furthermore, having to complete the Act 168 Form does not bar plaintiff from continuing to pursue employment in the educational field. He has not lost any license, certification, accreditation or other form of achievement. And beyond

_____

[4] The record indicates defendant only completed one other Act 168 Form pertaining to plaintiff's prior employment; it was returned to Ambridge School District and answered "No" to the inquiries at issue here.

having to explain the circumstances of his separation from defendant, a requirement deemed appropriate by the Pennsylvania legislature and governor, he has not advanced any meaningful evidence to show that either the form or defendant's answer will have an effect that will eclipse all of his future opportunities to secure employment in the educational field. Plaintiff's dissatisfaction with the form and personal belief that it presumptively will foreclose all such opportunities does not provide competent evidence to establish the same or otherwise make it so.

Against this backdrop, plaintiff's attempt to analogize his situation to that in Burns v. Alexander, 776 F. Supp.2d 57 (W.D. Pa. 2011), and the reasoning employed therein is unavailing. Burns involved a child daycare operator's ability to maintain a license to operate a childcare and learning center in the wake of a report of child abuse under the CPSL. The county was alleged to have investigated the matter superficially and then listed Burns as having an "indicated" report of child abuse in conjunction with an incident at her daycare facility. Burns successfully challenged that designation and an administrative law judge had directed the Department of Public Welfare to remove Burn's name from the central registry. Nevertheless, the listing of Burn's daycare operation as suspended was not corrected for several months and the correction was made only after the prime period for fall enrollment had passed. Burns lost $30,000.00 in grant money as a result. Id. at 62-69. Burns advanced the injuries sustained from the loss of her license and operating clearances in an effort to meet the stigma plus requirements. Id. at 81. In concluding that Burns had advanced averments sufficient to set forth a plausible claim for the violation of Burn's liberty interest as protected by the Fourteenth Amendment, the court considered not only the impact the erroneous listing had her employment prospects, but also the tangible injuries flowing from her temporary removal from

her daycare facility, the decision not to renew her operating license, the suspension of her daycare facility from the Keystone STARS program, and her loss of over $30,000.00 in grant money and tuition support. Id. at 83.

Here, in contrast to the actual loss of the separate property and license/operating privileges at issue in Burns, plaintiff can only advance what he perceives to be the potential detriment that a completed Act 168 Form might have on his future employment prospects. Such an injury repeatedly has been recognized as insufficient to sustain the "plus" component needed to proceed to trial on a deprivation of liberty claim. See Siegert v. Gilley, 500 U.S. 226, 234 (1991) (impairment of future job prospects is an injury to one's reputation but it does not rise to a level of constitutional concern); Hunter v. S.E.C., 879 F. Supp. 494, 497 (E.D. Pa. 1995) ("Even the 'serious impairment of future employment prospects' or loss of business opportunities resulting from an injury to reputation does not elevate a tortious injury to constitutional dimensions.") (quoting Siegert, 500 U.S. at 234 and citing Puricelli v. Borough of Morrisville, 820 F. Supp. 908, 915 (E.D. Pa. 1993), aff'd, 26 F.3d 123 (3d Cir.), cert. denied, 513 U.S. 930 (1994); Defeo v. Sill, 810 F. Supp. 648, 656 (E.D. Pa. 1993)); Clark, 890 F.2d at 620 ("The possible loss of future employment opportunities is patently insufficient to satisfy the requirement imposed by Paul that a liberty interest requires more than mere injury to reputation.").

Finally, in contrast to the circumstances in Burns, plaintiff's predicament is much more analogous to the scenario presented in Arneault v. O'Ttoole, 513 F. App'x 195 (3d Cir. 2013). There, Arneault was the chief executive officer of MTR Gaming, Inc.. Id. at 196. Among other things, Arneault became an applicant in a proceeding to renew his personal gaming license after directing MTR Gaming to lodge several complaints against the Pennsylvania

22

Gaming Control Board's ("PGCB") investigatory arm – the Bureau of Investigation and Enforcement ("BIE"). Id. at 197. The BIE prepared a Report of Investigation recommending that his license renewal be denied. Based in part on the Report, the Office of Enforcement Counsel issued a Notice of Recommendation advocating that the PGCB deny Arneault's application. Arneault presented evidence in support of his application at a hearing before the Board, and his license ultimately was renewed. Both the Report of Investigation and the Notice were made public prior to the hearing, which assertedly had harmed Arneault's reputation in the gaming industry. Id.

Arneault filed suit claiming his liberty interest had been infringed when the documents were published without first affording him a hearing. Id. at 198. Arneault did not lose his gaming license nor could he point to the loss of any particular job or job prospect. Id. Instead, he based his due process claim on the loss of possible future career prospects and the change in his legal status brought about by having to disclose the denial recommendation on future gaming license applications. Id. Our Court of Appeals found these deprivations insufficient to establish that Arneault had suffered the loss of an interest or right that would support a constitutional violation of his liberty interest under the Fourteenth Amendment. Id.

Similarly, plaintiff cannot point to the loss of a single employment opportunity from having to complete an Act 168 Form. The fact that defendant might in the future complete the form in the same manner as the one sent to DiClemente does not in itself deprive plaintiff of any existing property right, license or credentialing accreditation. It does not preclude him from applying for or being hired in any educational position. It merely burdens him with having to explain the circumstances under which he separated from his employment with defendant. The disclosure of such information and whatever impact it might have on the

prospective employer's consideration of plaintiff's application are not injuries of constitutional concern. It follows that plaintiff lacks sufficient evidence to satisfy the plus prong of his due process claim and defendant is entitled to summary judgment for this reason as well.

For the reasons set forth above, plaintiff has failed to advance sufficient evidence to support affirmative findings on any of the requirements needed to prove an unconstitutional infringement of his liberty interest in violation of the Fourteenth Amendment. Consequently, defendant's motion for summary judgment will be granted. An appropriate order will follow.

Date: September 27, 2019

s/David Stewart Cercone
David Stewart Cercone
Senior United States District Judge

cc:     Joel S. Sansone, Esquire
        Massimo A. Terzigni, Esquire
        Brian P. Gabriel, Esquire

        (*Via CM/ECF Electronic Mail*)